IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| WILLIE M. HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | 2:20-CV-00528-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| JUDGE DAVID R. CASHMAN, DISTRICT | ) | |
| ATTORNEY MICHAEL WAYNE | ) | |
| STREILY, PROTHONOTARY PATRICIA | ) | |
| NICOLA,  COMMON PLEAS COURT | ) | |
| ALLEGHENY COUNTY,  DISTRICT | ) | |
| ATTORNEY'S OFFICE ALLEGHENY | ) | |
| COUNTY,  SUPREME COURT OF | ) | |
| PENNSYLVANIA, SUED IN THEIR | ) | |
| INDIVIDUAL AND OFFICIAL | ) | |
| CAPACITY; | ) | |
| | ) | |
| Defendants, | ) | |

**MEMORANDUM OPINION[1]**

**Cynthia Reed Eddy, Chief United States Magistrate Judge.**

This prisoner civil rights action was initiated in this court on April 13, 2020, by *pro se* Plaintiff Willie Harris, who is incarcerated at SCI-Fayette.  In his first amended complaint ("FAC"), Plaintiff has asserted claims against the following Defendants: Allegheny County Court of Common Pleas Judge David Cashman ("Judge Cashman"), Pennsylvania Supreme Court Clerk Patricia Nicola, the Allegheny County Court of Common Pleas, the Supreme Court of Pennsylvania (collectively "Court Defendants"), Allegheny County Assistant District Attorney Michael Wayne Streily ("ADA Streily"), and the Allegheny County District Attorney's Office

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment.  (ECF Nos. 14, 30, 38).

(collectively, "DA Defendants"). The individual defendants have been sued in both their individual and official capacities. *See* FAC (ECF No. 39) at ¶¶ 3-9.  In the FAC, Plaintiff asserts causes of action against Defendants pursuant to 42 U.S.C. § 1983 and the First Amendment of the United States Constitution.  This Court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. § 1331.

Presently before the Court are motions by all Defendants to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (ECF Nos. 42, 44).  In addition, Plaintiff has filed a motion for a temporary restraining order ("TRO") against Defendants. (ECF No. 24).  For the reasons that follow, Defendants' motions to dismiss are granted and Plaintiff's motion for TRO is denied.

## I.      BACKGROUND

By way of background, on August 9, 1996, when Plaintiff was 18 years old, he shot and killed an individual.  On August 7, 1997, at Allegheny County criminal docket number 3121 of 1997, Plaintiff was convicted of first-degree murder, and on September 4, 1997, Plaintiff was sentenced to a mandatory term of life in prison without parole ("LWOP").  Plaintiff's conviction and sentence were affirmed by the Pennsylvania Superior Court, and his petition for allowance of appeal to the Supreme Court was eventually dismissed. *See Commonwealth v. Harris*, 860 A.2d 1129 (Pa. Super. 2004) (unpublished memorandum), *appeal dismissed as being improvidently granted*, 915 A.2d 626 (Pa. 2007). Between 2007 and 2017, Plaintiff filed three state court Post Conviction Relief Act ("PCRA") petitions, and relief was denied with respect to each one.

According to Plaintiff, beginning in November 2019, Judge Cashman "initiated and precipitated a series of events which [led] to the conspiratorial, retaliatory, intervention and interference of Plaintiff's Extraordinary Relief/Mandamus Petition for the valid exercising of his

[F]irst [A]mendment right and others." FAC (ECF No. 39) at ¶ 10. Specifically, Plaintiff avers that he submitted a petition for extraordinary relief with the Supreme Court of Pennsylvania, and in response, Judge Cashman "purposely submitted [a] corrected order in violation of [P]laintiff's constitutional rights." *Id.* at ¶ 14. It is Plaintiff's contention that Judge Cashman, along with ADA Streily, "knew in advance that submitting an order citing § 9711,[2] would moot Plaintiff's claim and lead to the denial of Plaintiff's petition." *Id.* at ¶ 16. Plaintiff further claims that Defendants have known since 2013 that Plaintiff was subjected to an illegal sentence, and they utilized this "corrected order as a retaliatory tool to chill [P]laintiff's constitutional right to redress and facilitate a result more favorable and reflective of prior decisions." *Id.* at ¶ 22.

In this action, Plaintiff is seeking "declaratory and injunctive relief as well as punitive and compensatory damages for a violation of his First Amendment right to petition [the] court."[3] *Id.* In addition, Plaintiff filed a motion for TRO, seeking "an immediate moratorium/restraining order upon the November 20, 2019 court order," which Plaintiff claims changed his original illegal sentence to another illegal sentence. Motion for TRO (ECF No. 24) at 2.

On December 9 and 14, 2020, Defendants filed motions to dismiss Plaintiff's FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be

---

[2] Here, Plaintiff is referring to 42 Pa.C.S. § 9711, which provides the procedure for sentencing in cases where an individual is convicted of first-degree murder. The Court of Common Pleas docket sheet reflects that on November 20, 2019, Judge Cashman filed a "Corrected Order of Court" to reflect this statute instead of 42 Pa.C.S. § 9715 (governing life imprisonment for homicide), which is the statute that was cited in Plaintiff's original September 4, 1997 sentencing order. Plaintiff filed a notice of appeal to the Pennsylvania Superior Court from Judge Cashman's November 20, 2019 order, which was docketed at 20 WDA 2020. That appeal was not resolved as of the date of this opinion.

[3] In his original complaint, Plaintiff asserted causes of action pursuant to the First, Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments to the United States Constitution. *See* Compl. (ECF No. 8) at 1. His FAC narrows his complaint to just his First Amendment claim.

granted and briefs in support thereof. (ECF Nos. 42-45). Plaintiff has filed a response, and these motions are now ripe for disposition.

## II.  STANDARD OF REVIEW

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The reviewing court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the factual allegations of the complaint conceivably fail to raise, directly or inferentially, the material elements necessary to obtain relief under a legal theory of recovery. *Twombly*, 550 U.S. at 561.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555).  The factual and legal elements of a claim should be separated, with the court accepting all well-pleaded facts as true and disregarding all legal conclusions. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130-31 (3d Cir. 2010).  Under this standard, civil complaints "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  A court in making this determination must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 583 (quoting *Scheuer v. Rhoads*, 416 U.S. 232, 236 (1974) (internal quotations omitted)).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may take into consideration "the allegations contained in the complaint, exhibits attached to

the complaint and matters of public record" as well as "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993).

Furthermore, a *pro se* pleading is held to a less stringent standard than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). As such, a *pro se* complaint pursuant to 42 U.S.C. § 1983 must be construed liberally, *Hunterson v. DiSabato*, 308 F.3d 236, 243 (3d Cir. 2002), so "as to do substantial justice." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citations omitted). In a Section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Riddle v. Mondragon*, 83 F.3d 1197, 2102 (10th Cir. 1996).

Furthermore, "when a complaint is subject to dismissal under Rule 12(b)(6), the court should permit a curative amendment." *Thompson v. Police Dep't of Philadelphia*, 2011 WL 4835831, at *2 (E.D. Pa. Oct. 12, 2011). "However, we need not provide a plaintiff with leave to amend if amendment would be inequitable or futile." *Id*. "Where a claim is frivolous, amendment is necessarily futile and, thus, leave to amend is not warranted. A claim is frivolous when it lacks an arguable basis in either law or in fact." *Id*. (internal citation and quotation marks omitted).

## III. DISCUSSION

### A. Individual Defendants

Here, Plaintiff attempts to assert Section 1983 claims against three individual defendants,

Judge Cashman, ADA Streily, and Nicola, in both their individual and official capacities.[4]

      *1.  ADA Streily*

In his motion to dismiss, ADA Streily contends, *inter alia*, that the claim against him in his individual capacity should be dismissed because he is entitled to absolute prosecutorial immunity.[5] Defs. Br. (ECF No. 43) at 8-10.   A prosecutor is entitled to absolute immunity for "certain prosecutorial functions." *Fogle v. Sokol*, 957 F.3d 148, 159 (3d Cir. 2020).  Specifically, "courts must focus upon the functional nature of the activities rather than [the prosecutor's] status to determine whether absolute immunity is warranted." *Id*. (internal quotation marks omitted). "That functional test separates advocacy from everything else, entitling a prosecutor to absolute immunity only for work intimately associated with the judicial phase of the criminal process." *Id*. at 159-60 (internal quotation marks omitted). "Absolute prosecutorial immunity exists when prosecutors are working within the judicial process, thereby functioning as the state's advocate." *Brady v. Office of the Cty. Prosecutor, Cty. of Bergen*, 2020 WL 5088634, at *5 (D.N.J. Aug. 28, 2020).

In determining whether immunity applies to a prosecutor's action, "in a motion to dismiss, it is the defendant's conduct as alleged in the complaint that is scrutinized." *Fogle*, 957 F.3d at 161 (internal quotation marks omitted). "[T]o earn the protections of absolute immunity, a defendant

---

[4] "[B]ecause claims against individual defendants in their official capacities are equivalent to claims against the governmental entity itself, they are redundant and may be dismissed." *Burton v. City of Philadelphia*, 121 F. Supp. 2d 810, 812 (E.D. Pa. 2000).  Thus, this Court will address Plaintiff's official capacity claims in conjunction with their employing entities *infra*.

[5] The DA Defendants also contend the claim against them should be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), the failure to alleged sufficient facts to state a claim upon which relief can be granted, the failure to allege a policy pursuant to section 1983, lack of subject matter jurisdiction, and the statute of limitations. *See generally* Defs.' Br. (ECF No. 43) at 6-16). Although one or more of these bases may provide relief to ADA Streily, this Court declines to address them.

must show that the conduct triggering absolute immunity clearly appear[s] on the face of the complaint." *Id*. (internal quotation marks omitted). "The prosecutor bears the heavy burden of demonstrating entitlement to absolute immunity." *Brady*, 2020 WL 5088634, at *5.

In the FAC, Plaintiff asserts the following specific allegations against ADA Streily:

> 15.   On 11-25-19, defendants(s) Streily and the DA's office along with defendant Cashman's attorney sent Plaintiff a letter stating no formal response will be filed in the matter and in fact, referred their response to the 11-20-19, corrected order of the court issued by defendant Cashman.
>
> ***
>
> 19.   On two different occasions starting in 2013, Plaintiff attempted to have his illegal sentence addressed and was denied.  In fact, plaintiff was told by defendant(s) Streily and the DA's office that he was crazy, confused and didn't know what he was talking about.  Defendant Cashman adopted this position and dismissed plaintiff's PCRA petition for being untimely and failing to have jurisdiction to hear the argument.
>
> ***
>
> 21.   After the original submittance [*sic*] and filing of Plaintiff's Writ of Mandamus/Extraordinary Relief Petition with the Pennyslvania Supreme Court defendant Cashman along with defendant(s) Streily and DA's office realized they could no longer arbitrary [*sic*] deny addressing plaintiff's illegal sentencing claim.

FAC (ECF No. 19) at ¶¶ 15, 19, 21.[6]

Based on the foregoing allegations, and applying the functional test set forth *supra*, it is clear that Plaintiff's complaints about ADA Streily's conduct relate to his advocacy-related and judicial portion of Plaintiff's case.  Plaintiff complains that ADA Streily did not file a brief and advocated against Plaintiff's obtaining relief on his PCRA petition.  Even considering the allegations in the FAC as a whole, Plaintiff has not alleged any conduct related to ADA Streily's

---

[6] In numerous paragraphs in the FAC, Plaintiff asserts claims against "other named defendants;" however, the aforementioned are the only allegations specifically referencing the ADA Streily or the DA Defendants.

"investigatory functions," which are the type necessary to deprive him of absolute immunity. Accordingly, this Court concludes that ADA Streily may invoke absolute immunity as a complete bar to civil liability in this case.  Because prosecutorial immunity bars any claim against ADA Streily related to the prosecution of Plaintiff's criminal case, this Court concludes that amendment would be futile.  Thus, ADA Streily is dismissed from this case with prejudice.

### 2.  *Judge Cashman*

Judge Cashman contends that the claim against him in his individual capacity should be dismissed because "[a] judge is immune from liability for all acts taken in his or her judicial capacity." Defs.' Br. (ECF No. 45) at 6.  "The Supreme Court long has recognized that judges are immune from suit under [S]ection 1983 for monetary damages arising from their judicial acts." *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768 (3d Cir. 2000).  This Court "must engage in a two-part inquiry to determine whether judicial immunity is applicable." *Id.*

> First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.  With respect to the first inquiry, the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.  Our task is to draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges, such as administrative acts.
>
> With respect to the second inquiry, we must distinguish between acts in the clear absence of all jurisdiction, which do not enjoy the protection of absolute immunity, and acts that are merely in excess of jurisdiction, which do enjoy that protection:
>
> > A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds,

the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.

A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction." Immunity will not be forfeited because a judge has committed grave procedural errors, or because a judge has conducted a proceeding in an informal and *ex parte* manner. Further, immunity will not be lost merely because the judge's action is "unfair" or controversial. In sum, our analysis must focus on the general nature of the challenged action, without inquiry into such "specifics" as the judge's motive or the correctness of his or her decision.

*Gallas*, 211 F.3d at 768-69 (internal citations and quotation marks omitted).

In the FAC, Plaintiff alleges that Judge Cashman "conspired with other named defendants to interfer[e] and derail Plaintiff's petition in order to deny Plaintiff requested relief." FAC (ECF No. 39) at ¶ 11. Specifically, Plaintiff contends that once Judge Cashman learned of Plaintiff's petition for writ of mandamus and application for leave to file original process filed with the Supreme Court of Pennsylvania, Judge Cashman filed a "corrected order in violation [of] [P]laintiff's constitutional rights." *Id*. at ¶ 14. Plaintiff also claims that Judge Cashman improperly denied and dismissed Plaintiff's PCRA petitions. *Id*. at ¶¶ 19-20.

Viewing these allegations in the light most favorable to Plaintiff, it is clear that he is complaining about orders entered by Judge Cashman. The entry of orders is clearly within the scope of Judge Cashman's judicial responsibilities, and there is no doubt that Judge Cashman, who entered the original sentencing order in Plaintiff's case, maintains jurisdiction over Plaintiff's criminal docket. Accordingly, Plaintiff's claim against Judge Cashman in his individual capacity is dismissed with prejudice. Furthermore, the Court concludes that amendment would be futile.

   *3. Patricia Nicola*

9

Nicola contends that claims against her in her individual capacity should be dismissed because she is entitled to "quasi-judicial immunity" as the claims against her relate to actions she performed pursuant to her duties as a court employee. Defs.' Br. (ECF No. 45) at 7. "Quasi-judicial officers, who act in accordance with their duties or at the direction of a judicial officer, also are immune from suit." *Stout v. Naus*, 2009 WL 1794989, at *3 (M.D. Pa. 2009). "The doctrine of absolute quasi-judicial immunity has been applied to court support personnel due to the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." *Id*.

According to Plaintiff, on February 22, 2020, Nicola "issued an order granting Plaintiff's Application for Leave to file Original Process but denying Plaintiff's Writ of Mandamus and/or Extraordinary Relief Petition and Application for Leave to File a Response to the Corrected order issued by Defendant Cashman." FAC (ECF No. 39) at ¶ 17 (some capitalization altered). Here, because Plaintiff's complaint against Nicola involves her role in filing an order, she is entitled to absolute quasi-judicial immunity as this act is a function "closely associated with the judicial process." *Stout*, 2009 WL 1794989, at *4. Accordingly, this Court dismisses Plaintiff's complaint against Nicola in her individual capacity. Moreover, this Court concludes that amendment would be futile. *See Thompson*, 2011 WL 4835831, at *2.

### B. Municipal Defendants and Official Capacity Claims

Plaintiff has also set forth his section 1983 claim against the Allegheny County Court of Common Pleas, the Supreme Court of Pennsylvania ("Commonwealth Defendants"), along with Judge Cashman and Nicola in their official capacities, as well as the DA's Office and ADA Streily in his official capacity. Section 1983 provides, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District

10

> of Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress....

> 42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead
> provides remedies for rights established elsewhere. To establish a § 1983 claim, a
> plaintiff must establish that the defendants, acting under color of state law, deprived
> the plaintiff of a right secured by the United States Constitution. To avoid dismissal
> for failure to state a claim, a civil rights complaint must state the conduct, time,
> place, and persons responsible for the alleged civil rights violations.

*Pettis v. Everhart*, 2020 WL 5548719, at \*2-3 (M.D. Pa. Sept. 16, 2020) (internal citations

omitted).

### 1. Commonwealth Defendants

As an initial matter, both the Allegheny County Court of Common Pleas and the Supreme

Court of Pennsylvania are "not subject to suit at all under § 1983, because states or governmental

entities that are considered arms of the state for Eleventh Amendment purposes are not 'persons'

within the meaning of § 1983 and consequently are not among those liable for violations of the

civil rights statute." *Reiff v. Philadelphia Cty. Court of Common Pleas*, 827 F. Supp. 319, 324

(E.D. Pa. 1993) (internal quotation marks omitted).  Thus, both the Allegheny County Court of

Common Pleas and the Supreme Court of Pennsylvania are dismissed with prejudice.

Thus, to the extent Plaintiff has stated a viable a claim against either the Allegheny County

Court of Common Pleas or the Supreme Court of Pennsylvania, the Commonwealth of

Pennsylvania would be the proper party. However, "[t]he 11th Amendment prohibits a suit against

a state" except under certain circumstances. *Mattas v. Supreme Court of Pennsylvania*, 576

F.Supp. 1178, 1182 (W.D. Pa. 1983).   Specifically, "[t]he court recognizes that Eleventh

Amendment immunity is … subject to three primary exceptions: (1) congressional abrogation, (2)

waiver by the state, and (3) suits against individual state officers for prospective injunctive and

declaratory relief to end an ongoing violation of federal law." *Murphy v. Office of Disciplinary Counsel*, 2019 WL 4752059, at \*16 n. 23 (E.D. Pa. Sept. 30, 2019).

With respect to the first exception, it is well settled that "Congress did not intend to abrogate Eleventh Amendment immunity by enacting 42 U.S.C. § 1983." *Id.* Furthermore, "the Commonwealth of Pennsylvania has enacted 42 Pa. C.S. § 8521(b), which expressly indicates that the Commonwealth has not waived its Eleventh Amendment immunity from suit in federal courts." *Id.* Finally, with respect to the third exception, the only state officers Plaintiff is suing are Judge Cashman and Nicola, neither of whom is involved in an ongoing violation of federal law with respect to Plaintiff. Accordingly, this Court concludes that granting leave to amend the FAC with respect to the Commonwealth of Pennsylvania, Judge Cashman, or Nicola is futile. Thus, all are dismissed from this case with prejudice.[7]

### 2. DA Defendants

Plaintiff has also set forth claims against the Allegheny County District Attorney's Office and ADA Streily in his official capacity. However, the Allegheny County District Attorney's Office is not a "person" subject to suit pursuant to Section 1983. *See Thompson*, 2011 WL 4835831, at \*2 (E.D. Pa. Oct. 12, 2011) ("The United States Court of Appeal for the Third Circuit has long held that local prosecutorial offices are not legal entities separate from the local governments of which they are a part and, consequently, that they may not be sued under § 1983."). Accordingly, the Allegheny County District Attorney's Office is dismissed with prejudice.

To the extent that Plaintiff has stated a viable claim, Allegheny County would be the proper

---

[7] As discussed *supra*, "claims against individual defendants in their official capacities are equivalent to claims against the governmental entity itself." *Burton*, 121 F. Supp. 2d at 812. Accordingly, the claims against Judge Cashman and Nicola in their official capacities are dismissed with prejudice as well.

defendant.  However, "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Ekwunife v. City of Philadelphia*, 756 F. App'x 165, 168 (3d Cir. 2018).  Where "there has been no constitutional harm," the municipal entity cannot be liable under § 1983. *Gayemen v. Sch. Dist. of City of Allentown*, 712 F. App'x 218 n.3 (3d Cir. 2017).

Here, as discussed *supra*, Plaintiff has failed to state a claim against ADA Streily for a constitutional violation.  Thus, any Section 1983 claim against Allegheny County or ADA Streily in his official capacity must also fail.  Accordingly, permitting Plaintiff to amend his complaint to substitute Allegheny County as a defendant would be futile.  Based upon the foregoing, both the Allegheny County District Attorney's Office and the claims against ADA Streily in his official capacity are dismissed with prejudice.

C. *Motion for TRO*

Finally, this Court considers the motion for TRO filed by Plaintiff.  In his motion, Plaintiff appears to request that this Court to deny enforcement of the November 20, 2019 sentencing order which changed the statute governing Plaintiff's sentence.[8] Motion for TRO (ECF No. 24) at 2.  It is Defendants' position that Plaintiff has failed to satisfy the standard necessary to obtain a TRO, and therefore Plaintiff's motion should be denied. *See* Defs.' Br. (ECF No. 35) at 5-8; Defs.' Br. (ECF No. 35) at 2-3.

"Like a preliminary injunction, a temporary restraining order is an extraordinary and drastic remedy ... that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Bullock v. Carney*, 463 F. Supp. 3d 519, 523 (D. Del. 2020) (internal quotation marks

---

[8] It should be noted that the term of Plaintiff's LWOP sentence has never changed.

omitted).  "The purpose of a temporary restraining order is to preserve the *status quo* so that a reasoned resolution of a dispute may be had." *Id*.  "The Third Circuit has defined the *status quo* as the last, peaceable, noncontested status of the parties." *Id*.  "To obtain a temporary restraining order, a movant must establish that he is likely to succeed on the merits and will suffer irreparable harm in the absence of preliminary relief." *Id*.

As discussed *supra*, this Court has concluded that Plaintiff has failed to state a claim against Defendants.  Accordingly, Plaintiff has not established that he is likely to succeed on the merits of his claims, and therefore Plaintiff's motion for TRO is denied.  *See e.g.*, *Wilson v. Murphy*, 2020 WL 7022629, at *8 (D.N.J. 2020) ("[G]iven the complaint is being dismissed in its entirety, any request for preliminary injunctive relief is also not warranted at this time.").

## IV.     CONCLUSION

For all the foregoing reasons, this Court grants the motions to dismiss filed by Defendants, and all Defendants are dismissed from this case with prejudice.  In addition, Plaintiff's motion for TRO is denied.  An appropriate Order follows.


Dated: February 16, 2021.

                                                  s/Cynthia Reed Eddy
                                                  Cynthia Reed Eddy
                                                  Chief United States Magistrate Judge


cc:     WILLIE M. HARRIS
        DK 1644
        SCI FAYETTE
        48 Overlook Drive
        LaBelle, PA 15450
        (via U.S. First Class Mail)

        Counsel of record
        (via ECF electronic notification)